UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-81100-CIV-MIDDLEBROOKS/VITUNAC

LIZABETH PONCE,

       Plaintiff,

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

       Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant Life Insurance Company of North America's ("LINA") Motion for Summary Judgment (DE 30) ("Motion"), filed June 15, 2012. Plaintiff Lizabeth Ponce ("Plaintiff") filed her Response (DE 33) on July 2, 2012, to which LINA filed a Reply (DE 34) on July 12, 2012. I have reviewed the Motion, Plaintiff's Response, LINA's Reply, and the record in this case, and am otherwise fully advised in the premises.

On September 30, 2011, Plaintiff filed her Complaint (DE 1) against LINA pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking reinstatement of discontinued long-term disability ("LTD") insurance payments that Plaintiff claims she was owed under an employee welfare benefit plan (the "Policy") insured by LINA. (*See* DE 1 at ¶ 1).

In the instant Motion, LINA asks the Court to enter summary judgment in its favor because, as a matter of law, Plaintiff's claims are barred by the contractual limitations period provided in the

1

Policy. In the alternative, LINA further argues that summary judgment is appropriate because "the undisputed material facts establish that Plaintiff did not meet her burden to show continued proof of disability" as required by the Policy, thus meriting entry of summary judgment in favor of LINA. (DE 30 at 1). In her Response, Plaintiff argues that the instant action is timely and that LINA abused its discretion by rejecting the opinion of Dr. Farkas, thereby requiring the Court to deny LINA's Motion for Summary Judgment. (*See* DE 33 at 3-9).

## I. FACTUAL BACKGROUND

The following facts are undisputed.[1] Plaintiff was employed as a Chief Clerk – a sedentary position – for Liberty National Life Insurance Company ("Liberty National") from September 10, 2001, until September 2, 2004. (DE 32 at ¶ 1). Plaintiff stopped working because of a subsequent diagnosis of chronic pain syndrome, cervical myofascial pain syndrome, cervical spondylosis with herniated discs, spinal stenosis, low back disc herniation, and gastroesophageal reflux disease. (*Id.* at ¶ 9). As an employee of Liberty National, Plaintiff was covered under a group LTD plan, for which LINA issued the Policy of insurance. (*Id.* at ¶ 2).

The Policy provides, in relevant part:

> The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. The Employee must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy. He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid.

---

[1] The facts here are taken from LINA's Statement of Undisputed Material Facts (DE 32), as Plaintiff does not dispute any of the facts set forth by LINA, nor did Plaintiff file her own statement of facts. Because Plaintiff failed to controvert LINA's Statement of Undisputed Material Facts and because LINA's facts are supported by evidence in the record, in accordance with Southern District of Florida Local Rule 56.1, LINA's facts are deemed admitted by Plaintiff. *See also* Fed. R. Civ. P. 56(e) ("[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56c, the court may . . . consider the fact undisputed for purposes of the motion"); S.D. Fla. L.R. 56.1(b).

2

> . . .
> The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

(DE 32-1 at 9).[2] Further, according to the Policy, the employee claiming benefits is required to provide "proof of loss" that must be given to LINA "within 90 days after the date of the loss for which a claim is made." (*Id.* at 15). If proof is not provided within the 90-day period, the employee must provide proof "not more than one year after that 90 day period," or else the claim will be denied. (*Id.*).

The Policy also contains a contractual limitations period for which an employee may bring legal action against LINA for benefits. (*See id.* at 16). Relevant to the instant Motion, the limitations provision provides, "No [] action shall be brought more than 3 years after the time satisfactory proof of loss is required to be furnished." (*Id.*). Moreover, the next provision states:

> If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, *is less than that permitted by the law of the state in which the Employee lives* when the Policy is issued, then the time limit provided in the Policy is *extended to agree with the minimum permitted by the law of that state.*

(*Id.*) (emphasis added).[3]

After Plaintiff stopped working, and pursuant to her diagnoses listed above, LINA approved Plaintiff's claims for LTD benefits on June 3, 2005. (DE 32 at ¶¶ 9, 10). On July 12, 2005, Plaintiff underwent a cervical fusion surgery. (*Id.* at ¶ 11). According to her treating Neurologist, Dr. Jacques N. Farkas ("Dr. Farkas"), Plaintiff's post-operative course was uncomplicated; however,

---

[2] The Court notes that the plain language in the policy puts the burden on Plaintiff to provide LINA with "satisfactory proof" of her disability.

[3] The Parties agree that Plaintiff resided in Florida at the time the Policy was issued. Thus, Florida law is applied for purposes of this provision.

3

Plaintiff required admission to a psychiatric facility due to her depression following the surgery. (*Id.*). Plaintiff then underwent low back surgery on September 27, 2005, which was also performed by Dr. Farkas. (*Id.* at ¶ 12).

On April 6, 2006, Dr. Farkas saw Plaintiff and noted that she was doing "quite well," and that her main complaints were regarding dental issues. (*Id.* at ¶ 13). Although Dr. Farkas noted that she had some mild myofacial pain after her surgeries, he opined that she was doing "excellently" in her recovery. Finding that there was not anything else he could offer her at the moment, he recommended that Plaintiff return to see him in six months. (*Id.* at ¶ 13).

Then, on May 12, 2006, Plaintiff had an MRI of her neck, which showed no recurrent disc herniation. (*Id.* at ¶ 14). On June 8, 2006, tests consisting of an electromyography and a nerve conduction were conducted due to Plaintiff's complaints of an abnormal sensation in her arm and numbness in her hands and feet. Both tests performed came back with normal results. (*Id.* at ¶ 15). On June 16, 2006, a different neurologist, Dr. Feinrider, noted that the criteria for carpal tunnel syndrome was "very minimal," but still there, and recommended that Plaintiff use hand braces. (*Id.* at ¶ 16).[4] Moreover, Dr. Feinrider determined that the MRI of her neck and brain were "essentially unremarkable." (DE 31-3 at 100).

When it came time to assess Plaintiff's continued eligibility for LTD benefits, LINA sent to Dr. Farkas a Physical Ability Assessment ("PAA") to be completed by him. (DE 32 at ¶ 17). Dr. Farkas declined to participate in the PAA, but suggested that the form should be completed by a Physical Therapy or Rehabilitation doctor. (*Id.*). On July 10, 2006, a Medical Director for LINA

---

[4]Subsequently, on December 1, 2006, Dr. Feinrider noted that Plaintiff related to him that the hand braces helped. (DE 31-3 at 95).

reviewed Plaintiff's file, noted the "exam findings do not reveal an impairment of function," and recommended a Functional Capacity Evaluation ("FCE") to determine Plaintiff's functional capacity. (*Id.* at ¶ 18).

Pursuant to the recommendation, on August 31, 2006, Emilia Andriescu, a physical therapist, performed an FCE on Plaintiff and, specifically noting Plaintiff's "self limiting [sic] and [] submaximal effort" and "complaints of pain and disability seem[ingly disproportionate to Plaintiff's] physiological presentation," (*id.* at 19; DE 31-5 at 8), concluded that Plaintiff was able to work within the sedentary work classification category. (*Id.* at 19). On that same date, Ms. Andriescu also completed a PAA, which determined that Plaintiff was able to perform the requirements of a sedentary class occupation during an eight hour day. (DE 32 at ¶ 20).

On September 18, 2006, LINA notified Plaintiff that it was conducting a review of her case to determine if she would remain eligible for benefits beyond date when the Policy required Plaintiff to establish that she was unable to perform any occupation. (*Id.* at ¶ 21). LINA provided the results of the August 31 FCE to Dr. Farkas on October 5, 2006. In its letter to Dr. Farkas, LINA informed Dr. Farkas that LINA would presume him to be in agreement with the FCE findings if he did not respond by October 19, 2006. (*Id.* at ¶ 22). Dr. Farkas did not respond. (*Id.*).

On October 20, 2006, LINA notified Plaintiff that, given the FCE and lack of clinical support to show a functional impairment that would prevent her from performing sedentary work, she no longer qualified for LTD benefits. (*Id.* at ¶ 24). On October 25, 2006 and December 19, 2006, Plaintiff appealed LINA's decision to deny her LTD benefits and provided additional medical records to LINA. (*Id.* at ¶ 25). These additional records documented a removal of scar tissue in December of 2006, along with gastrointestinal complaints, carpal tunnel syndrome, hypertension,

depression, and gastroesophageal reflux disease. (*Id.*).

Plaintiff's file was reviewed on appeal by another Medical Director who advised that the medical records failed to reveal documented significant clinical findings to support the imposed restrictions. (*Id.* at ¶ 27). Further, the Medical Doctor noted that the FCE showed that Plaintiff had the functional capacity to perform at the sedentary level and the gastrointestinal symptoms and work-up were not so severe as to justify work restrictions. (*Id.*). Accordingly, LINA affirmed its denial of LTD benefits on March 13, 2007. (*Id.* at ¶ 28).

On April 27, 2007, Plaintiff again appealed LINA's decision to deny her LTD benefits. (*Id.* at ¶ 29). On that appeal, Plaintiff provided to LINA an April 5, 2007 consultation note by Dr. Farkas wherein he admitted he had not seen Plaintiff since September of 2006 and noted that Plaintiff "appear[ed] to be suffering with a chronic pain syndrome[, was] having an exacerbation of a post lumbar laminectomy syndrome[, and was suffering] with a mild cervical myofascial pain syndrome." (DE 31-3 at 84). He also noted that Plaintiff "ha[d] undergone an MRI scan of the lumbar spine . . . within the last week [which revealed] persistent degenerative disk changes with disc protrusions at L3-L4, L4-L5 and L5-S1." (*Id.*). He then went on to conclude that due to her chronic pain syndrome as well as her psychiatric disease,[5] Plaintiff would never be able to return to her previous occupation or tolerate any other type of work, and so she was "permanently [and] totally disabled." (*Id.*).[6]

After reviewing the complete file and additional medical records provided by Plaintiff, on

---

[5] Dr. Farkas did not elaborate on the nature or extent of Plaintiff's "psychiatric disease."

[6] Dr. Farkas reached the conclusion that Plaintiff was permanently disabled despite the fact that she had been babysitting 20 hours per week prior to the examination. (*Id.*).

6

May 8, 2007, LINA advised Plaintiff that it was upholding its prior denial of LTD benefits because she had not provided clinical data to explain why she was unable to perform at the level identified in the FCE. (DE 32 at ¶ 31). In reaching this conclusion, Defendant acknowledged its review of the complete file, which included Dr. Farkas' April 5 report, "without deference to prior reviews." (DE 32-11 at 2). In its May 8 letter to Plaintiff, LINA notified Plaintiff that she had exhausted her administrative remedies and that she had the right to bring legal action under ERISA. (DE 32 at ¶ 32). On September 30, 2011, Plaintiff filed this action. (*See* DE 1).

## II. LEGAL STANDARDS

*A. Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), a district court's decision to grant summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine where the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. See *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). Generally, a district court's central inquiry when determining whether it should grant a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

However, in an ERISA benefits denial case, the summary judgment analysis differs, as "in a very real sense, the district court sits more as an appellate tribunal than as a trial court." *Curran*

*v. Kember Nat. Servs. Inc.*, No. 04-14097, 2005 WL 895840, at *7 (11th Cir. Mar. 16, 2005). The court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the" policy's administrator. *Id.* Thus, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Turner v. Am. Airlines, Inc.*, No. 10-80623-CIV, 2011 WL 1542078 (S.D. Fla. Apr. 21, 2011) (quoting *Crume v. Metropolitan Life Ins. Co.*, 417 F. Supp. 2d 1258, 1272 (M.D. Fla.2006)).[7]

B. *ERISA Standard of Review*

Under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary in a benefits plan may initiate a civil action to recover benefits due to her under the terms of the Policy, and to enforce or clarify her rights under the terms of the policy. While ERISA does not provide standards for reviewing decisions of policy administrators, the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989), set forth three distinct standards for courts when reviewing an ERISA policy administrator's decision: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion and the administrator has a conflict of interest." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010) (citing *Buckley v. Metro. Life*, 115 F. 3d 936, 939 (11th Cir. 1997). The Eleventh Circuit expanded on the

---

[7]The Court notes that "conflicting evidence on the question of disability cannot alone create an issue of fact precluding summary judgment, since an administrator's decision that rejects certain evidence and credits conflicting proof may nevertheless be reasonable." *Id.*

8

*Firestone* test, providing a six-step analysis to guide district courts in reviewing a policy administrator's decision:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Capone*, 592 F. 3d at 1195 (citing *Williams v. Bellsouth Telecomms., Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004)).

Recently, the Eleventh Circuit amended the last step of the analysis due to the Supreme Court's decision in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), which "called into question the Eleventh Circuit's heightened arbitrary and capricious standard." *Capone*, 592 F. 3d at 1195. Under the Eleventh Circuit's amended approach, "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Id.* at 1360. Moreover, "the burden remains

9

on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id.*[8]

## III. DISCUSSION

With the above-mentioned rules and standards in mind, and noting that there "may indeed be unresolved factual issues evident in the administrative record, but unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they normally would," *Torres v. Prudential Ins. Co. of Am.*, No. 11-61605, 2012 WL 3001156, at *3 (S.D. Fla. July 23, 2012) (citing *Pinto v. Aetna Life Ins. Co.*, No. 09–01893, 2011 WL 536443, at *8 (M.D. Fla. Feb. 15, 2011), I turn to the instant Motion to determine whether summary judgment is appropriate.

In the instant case, LINA, as administrator of the Policy, was vested with discretion in reviewing claims. *See* (DE 32-1 at 9) ("[The employee] must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid."); *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F. 3d 1227, 1233-34 (11th Cir. 2006). As a result, even if this Court were to find that LINA's decision was *de novo* wrong, the ultimate question here is whether "reasonable" grounds supported LINA's ultimate decision; or, differently worded, whether LINA's final denial of LTD benefits was "arbitrary and capricious." *See Capone*, 592 F. 3d at 1195.

In reaching its decision, LINA relied on the original reports from Dr. Farkas that stated there was nothing else Dr. Farkas could do for Plaintiff, that she was recovering very well from her surgeries, and that she only complained of dental issues. LINA considered normal results that came

---

[8] Since Plaintiff does not appear to allege that LINA's administration of the Policy was "tainted by self-interest," I will not consider whether there was any conflict of interest.

from the electromyography and nerve conduction. LINA also considered Dr. Feinrider's conclusion that Plaintiff's carpal tunnel syndrome was "minimal." Moreover, LINA's Medical Directors reviewed the FCE and PAA, both of which came to the conclusion that Plaintiff would be able to return to work in a sedentary position.

In arguing LINA's decision unreasonable, Plaintiff relies heavily on Dr. Farkas' April 5, 2007 report in which Dr. Farkas opines that Plaintiff is "permanently totally disabled." Even taken in the light most favorable to Plaintiff, Dr. Farkas' report cannot be said to trump the opinions of LINA's medical directors, as Dr. Farkas' report does not take into consideration the FCE and PAA. Moreover, his conclusion is based partly on Plaintiff's "psychiatric disease," on which he does not elaborate, and largely on Plaintiff's own complaints of pain. As noted above, the burden was on Plaintiff to provide satisfactory proof of Plaintiff's disability to LINA.

Although it certainly appears that Plaintiff had serious physical symptoms relating to her original diagnoses, even taking the evidence in the light most favorable to Plaintiff, LINA was faced with conflicting information as to whether Plaintiff would be able to return to work in a sedentary capacity. *See Millman v. Kemper Nat. Services Plantation, Fla.*, 147 F. Supp. 2d 1329, 1334 (S.D. Fla. 2001) (citing *Jet v. Blue Cross & Blue Shield of Al., Inc.*, 890 F. 2d 1137, 1140 (11th Cir. 1989)) (holding that a benefits denial was not arbitrary and capricious despite evidence that would support a contrary decision). Further, while the clinical reports may have contradicted the findings of Dr. Farkas, LINA's decision to give more weight to the objective data in the FCE, PAA, and reviews of its Medical Doctors is neither arbitrary nor capricious. *See Gipson v. Administrative Committee of Delta Air Lines, Inc.*, 350 F. App'x 389, 395 (11th Cir. 2009) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)) ("A plan administrator has no obligation to give

11

a treating physician's opinion more weight."); *see also Watts v. BellSouth Telecomms., Inc.*, 218 F. App'x 854, 856 (11th Cir. 2007) ("[W]here the plan puts the burden on the claimant to prove that she is disabled, it is implicit in the requirement of proof that the evidence be objective.").[9] Given these facts, this Court cannot say that LINA's decision to terminate Plaintiff's LTD benefits was unreasonable.

## IV. CONCLUSION

Having considered the arguments of the parties, the record, and the relevant legal authorities, this Court finds that LINA's decision to deny Plaintiff of LTD benefits under the Policy was not arbitrary or capricious. Furthermore, as I find that LINA's decision to deny Plaintiff LTD benefits was reasonable, summary judgment in LINA's favor is appropriate, and I decline to address the issue of timeliness.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE 30) is **GRANTED**. The Clerk of Court shall **CLOSE** this case. The Calendar Call scheduled for October 3, 2012 is **CANCELLED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 28 day of September, 2012.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

---

[9] Moreover, I note that LINA reviewed Dr. Farkas' April 5 report "without deference to prior reviews," but nevertheless made its determination that it had "not been provided with the clinical data to explain why [Plaintiff] would be unable to perform at the [sedentary level]." (DE 32-11 at 2).